WILLIAM H. STEVENS v. WILLIAM E. PENDLETON AND WILLIAM D. MORTON.[1]

*Principal and surety—Change in contract—Release of surety—Burden of proof.*

1. The change in the terms of an agreement which will operate to discharge a surety must have been made by the *intentional* act of the original parties.

2. A land-owner agreed to advance a specified sum, to be used in erecting a hotel on the land, which the party to whom the advances were to be made was to lease for a term of years at a fixed rental, payable quarterly *in advance*, for the payment of which rent a third party became surety. After the completion of the buildings a lease was executed between the parties, by which the rent was made payable at the *end* of each quarter. Suit was brought against the lessee and the surety upon the original agreement to recover rent, after which the lessor filed a bill to reform the lease so as to conform to the agreement as to the time of payment of rent, he claiming that the change was made by mistake in drafting the lease. The surety was not made a party, and a *pro confesso* decree was secured reforming the lease, as prayed. On the trial of the suit at law the decree and anterior proceedings were received in evidence without objection. The surety introduced the testimony of two witnesses tending to show that the change as to time of payment of rent was intentional, which testimony was uncontradicted. The circuit judge held that the surety was discharged, and directed a verdict for the defendants, and in affirming the judgment it is held:

*a*—As between the parties to the chancery suit, the decree is conclusive that the change as to time for payment of rent was made by mistake; but the same rule does not apply to the surety, who if made a party, could have shown in the chancery suit, and may show in the suit at law, that the change was intentionally made, thereby discharging him from liability-

*b*—This defense is made out, *prima facie*, by the introduction of the lease, and is rebutted by the introduction of the enrolled decree, and the burden is cast upon the surety to negative the

---

[1] A rehearing was ordered in this case December 24, 1890, and the case reargued February 13, 1891.

alleged mistake, which he is held to have done by the testimony of the witnesses before referred to.

Error to Wayne.   (Hosmer, J.)   Argued November 11, 1890.   Decided November 21, 1890.

*Assumpsit.*   Plaintiff brings error.   Affirmed.   The facts are stated in the opinion.

*Barbour & Rexford,* for appellant, contended:

1. Sureties are undoubtedly concluded by the judgment against their principals when it has been obtained in the customary manner, and in the course of regular proceedings; citing *Wright v. Hake,* 38 Mich. 525, 531; *Lowell v. Parker,* 10 Metc. 309; *Bradwell v. Spencer,* 16 Ga. 578; *Huzzard v. Nagle,* 40 Penn. St. 178; *Drummond v. Prestman,* 12 Wheat. 515.

2. When the suit is against the principal and surety jointly on a joint or joint and several obligation, an admission or declaration of the principal which is competent evidence against him is also generally held to be competent evidence against the surety; citing Brandt, Sur. § 519; *M'Neale v. Governor,* 3 Gratt. 299; *Bank v. Brownell,* 9 R. I. 168; *Bank v. Root,* 2 Metc. 522; and if a fact may be so proved against a surety by the admissions of the principal, then why not by the more solemn act of confessing it of record? citing *Drummond v. Prestman,* 12 Wheat. 515; and hence it clearly follows that Morton was not a necessary party to the chancery suit in order that the decree should be at least *prima facie* evidence against him.

3. No person need be made a party who would not be at liberty to answer, and contest the right to the relief prayed; citing Barb. Par. 452; *Lee v. Colston,* 5 T. B. Mon. 245; and it is a general rule that no one need be made a party against whom, if brought to a hearing, the complainant can have no decree; citing *De Golls v. Ward,* cited 3 P. Wms. 311 (note); Barb. Par. 457; and, generally, no one ought to be made a party against whom the complainant can have no decree; citing 6 Am. & Eng. Enc. Law, p. 744, and note.

4. An agreement with the principal to vary the contract must obviously be ineffectual as a legal discharge of the surety whenever it is legally inoperative, whatever the cause that interferes with its operation: citing *Rees v. Berrington,* 2 Lead. Cas. Eq. (4th Am. ed.) 1876.

*Dickinson, Thurber & Stevenson,* for defendants.

CHAMPLIN, C. J. On December 21, 1886, William H. Stevens entered into a contract in writing, by which he agreed to loan and advance to William E. Pendleton not exceeding $10,000, for the purpose of erecting a hotel or road-house, including barns, outhouses, sheds, etc., on land belonging to Stevens, to be built according to the plans and specifications of the architect under the supervision of Pendleton. When it was completed and ready for occupancy, Stevens was to lease the buildings to Pendleton for a period of 10 years from the date of the lease, and he was to pay Stevens 6 per cent. interest on whatever sum the buildings cost, not exceeding $10,000, from the date of the advances until May 1, 1887. As soon as he commenced to occupy, Pendleton was to pay, for a period of five years, as rental, a sum equal to 6 per cent. of the total cost, and for the four acres of land upon which it was erected a rental equal to 6 per cent. on $2,000, and for the next five years a rental equal to seven per cent. of the total cost of the buildings and improvements, and on the value of the land as aforesaid; and he was to keep the buildings insured to three-fourths of their value, for the benefit of Stevens, and pay the taxes assessed thereon. The rent was to be paid quarterly on the *first* day of each and every quarter.

The following agreement was annexed to or underwritten such contract, viz.:

"In consideration of the erection of said buildings, and the leasing of the premises above described, and for the sum of one dollar to us in hand paid, we do hereby become surety for the punctual payment of the interest and rent and the performance of the covenants in the above-written agreement and lease mentioned, to be paid and performed by said W. E. Pendleton, as therein specified; and, if default shall at any time be made therein, we do hereby promise and agree to pay unto the said W. H. Stevens the said rent, or any arrears thereof, that may be due, and fully satisfy the conditions of the said agree-

ment or lease, and all damages that may accrue by reason of the non-fulfillment thereof, without requiring notice or proof of demand being made.

"Given under our hand and seals, this 21st day of December, A. D. 1886.

[sd] "WM. E. PENDLETON.
[sd] "WM. D. MORTON."

A written lease was entered into, dated May 1, 1887, between Stevens and Pendleton, fixing the annual rental, and requiring it to be paid quarterly, on the *last* day of each and every quarter. This action was brought, based upon the agreement above set out, to recover rent which the plaintiff claims was due and unpaid.

After the suit was begun, Stevens filed a bill in chancery in the circuit court for the county of Wayne against Pendleton, in which Morton was not made a party, to reform the lease so as to provide that the rent should be due and payable on the *first* day of each quarter, instead of the *last* day, basing his right to such decree upon the agreement above set forth and a mistake in drafting the lease. This suit was not defended, and a decree *pro confesso* was entered on December 13, 1888, in which it was decreed that the lease should be and was thereby reformed, "so that, by the terms thereof, the rental therein agreed to be paid by the said defendant shall be payable quarterly on the first day of each and every quarter during the term of said lease, instead of on the last day of each and every quarter during the term of said lease." The bill of complaint and decree were introduced in evidence without objection.

There were several questions raised upon the trial, but which we do not consider it proper for us to pass upon, as only one question necessarily disposes of the case. Counsel for defendant Morton took the position in the court below that their client was absolutely discharged from all liability on his agreement of suretyship, for the

reason that the time of payment of rent was changed, without his knowledge or consent, from the first day of each quarter to the last day, and no decree of court made in a suit where he was not a party could, by reforming the lease, impose a liability upon him from which, by the act of the plaintiff and the principal, he had been discharged. This leads to the inquiry whether there has been a change of the terms of the lease from that which Morton agreed to answer as surety. The law is settled that if the parties to a contract alter the terms of the agreement for which a surety has become bound, so that it is materially different from what it originally was, the surety will be discharged. There are exceptions to the rule which need not be noticed here. But it must be borne in mind that such alteration, to have the effect to discharge the surety, must have been an intentional act of the parties. If it was done by mistake, and without an intention to vary the terms of the agreement, the surety is not discharged. The decree of the court in this case has settled that question, as between the parties to that suit, that the time of payment in the lease was, by mistake, made to read the last instead of the first day of the quarter.

But it is urged that the surety was a proper, if not a necessary, party to the suit to reform the lease. This is undoubtedly true. If he had been made a party he might have interposed the defense that the change was intentionally made, and hence be discharged from liability. The decree, therefore, is not conclusive upon him, and the same defense is open to him in this suit as would have been in the chancery suit. He may show that the variance was intentional; and his defense is *prima facie* made out when the lease is introduced. But this again was rebutted when the proceedings, including the decree, in the chancery suit were introduced in evidence. This was

evidence of the mistake, and conclusive between the parties, and, while not conclusive as against defendant Morton, it was *prima facie* evidence of the fact, and the burden was upon him to show that the minds of the parties met as to time of payment specified in the lease. He did show by the witness Pendleton, who was a party to the lease, that the rent was payable at the last of the quarter, according to its terms. In addition to this, the agent of plaintiff, Fremont Woodruff, was sworn, and testified on behalf of the plaintiff as to the rent due upon the lease; being, as he testified, the rent due for the balance of the quarter ending October 31, 1887, for the quarters ending January 31, 1888, April 30, 1888, and July 31, 1888. These dates correspond with the times specified in the lease before it was reformed. There was no testimony contradicting these two witnesses, and consequently the court was right in holding the surety discharged and directing a verdict for defendants.

The judgment is affirmed.

The other Justices concurred.