WILLIAM H. STEVENS v. WILLIAM E. PENDLETON AND WILLIAM D. MORTON.

[See 83 Mich. 342; 85 Id. 137; 94 Id. 405.]

*Evidence—Directing verdict.*

A land-owner agreed to advance a specified sum, to be used in erecting a hotel on the land, which the party to whom the advances were to be made was to lease for a term of years at a fixed rental, payable quarterly in advance. After the completion of the buildings a lease was executed between the parties, by which the rent was made payable at the end of each quarter. The landlord brought suit on the original agreement to recover rent, and the defendants sought to show that the change in the time of payment of rent was agreed upon between the plaintiff and the tenant, and the tenant testified in support of said claim. And it is held that it is apparent that the witness based his claim of a change in the agreement upon the fact that the lease contains the clause as to payment at the end of each quarter, or else that he depended upon an alleged oral agreement, made prior to the making of the original contract, contradicting said contract; that this testimony cannot be construed as tending to show that a change was agreed upon, particularly when the testimony of the attorney who prepared said original agreement and said lease, that there was no agreement for a change in the time of payment of the rent, and of the plaintiff, that he never authorized any such change, is taken into account.

Error to Wayne. (Hosmer, J.) Submitted on briefs May 1, 1895. Decided May 28, 1895.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the several opinions.

*Dickinson, Thurber & Stevenson,* for appellants.

*Barbour & Rexford,* for plaintiff.

MONTGOMERY, J. This case has been before the Court on three former occasions, and is reported in 83 Mich. 342, 85 Id. 137, and 94 Id. 405. The facts sufficiently appear in the former opinions. It was held, when the case was here before, that the determination in the chancery proceeding against defendant Pendleton, that there was a mistake in preparing the lease, was not conclusive on the surety, but it was held, in effect, that the force of the lease as evidence had been broken by the chancery decree, and that the burden of proof rested with the defendants to show that there was an agreement to effect a change from the terms of the original contract. On the last trial the circuit judge directed a verdict against defendants on the ground that the testimony had no tendency to show that such an agreement had in fact been made, and, on the present appeal, the sole question discussed in the brief of defendants' counsel is whether this ruling is justified by the evidence. Upon this subject Mr. Pendleton testified, in different places in the record, as follows:

"*Q.* What arrangement was there between you and Stevens by which the rent was to be payable at the end of the quarter rather than at the beginning of the quarter? Was there any different arrangement than that mentioned in this preliminary agreement?

"*A.* The only arrangement was that the rent was to be paid at the end of the quarter; at the end of the three months I was to pay the rent. That was all between Mr. Stevens and I and Mr. Woodruff. Mr. Woodruff understands it; he made the papers out.

"*Q.* Was the payment to be made according to the arrangement in this first agreement between you and Mr. Stevens?

"*A.* Well, it was to be paid every three months.

"*Q.* Was it to be paid according to the arrangement stated in this agreement [referring to the original agreement]?

"*A.* I suppose, if we both signed it, it was.  *  *  *

"*Q.* Was there any subsequent arrangement between you and Mr. Stevens that varied the terms of that writing?

"*A.* No, not that I know of. It was mentioned in the lease.

"*Q.* How did it come to be mentioned in the lease differently?

"*A.* I don't know. That is the way it was understood, and that is the way it was made. I don't know that it was to be made. It was to be paid every three months.

"*Q.* There was no talk between you and Mr. Stevens with reference to making any changes, was there?

"*A.* Not making any changes; no, sir.

"*Q.* So that you don't know how it came about?

"*A.* I could not say. I know it was to be paid every three months. That was the *first agreement*.

"*Q.* Every three months; how?

"*A.* It was to be paid at the end of every three months, —at the end of each quarter. That is the arrangement we made when I took the lease.

"*Q.* That was the arrangement when you took the lease?

"*A.* Yes, sir.  *  *  *

"*Q.* Did you have any talk with Mr. Woodruff at the time of the drawing of the second lease as to the terms when the rent was to be payable?

"*A.* At the end of each quarter. *The lease was to be the same as the other.* To be paid at the end of each quarter.

"*Q.* Did you have any *conversation* with him to that effect?

"*A.* That was the way it was to be paid,—the *lease* was.

"*Q.* Was there any time when it was not agreed that you should pay the rent at the end of the quarter from the time that the lease was executed?

"*A.* No, sir. At the end of the quarter; that was the way.  *  *  *

"*Q.* That is to say, it was never understood, after the execution of that writing, any different from what the writing expresses?

"*A.* I don't recollect about that writing, but that was the arrangement of the lease. At the end of every three months I was to pay the rent.

"*Q.* And the rent was to be in accordance with this writing, was it not?

"*A.* Well, I don't know how that is particularly; I have forgotten.

"*Q.* You don't know of any writing to the contrary, do you?

"*A.* I don't know anything about it; only I know that the rental was to be paid at the end of every three months.

"*Q.* You don't know of any contract to the contrary, by which the lease was to be made different from this [referring to the original contract]?

"*A.* We had no talk different from it; only from the *first* agreement it was to be paid every three months. Mr. Stevens was satisfied, and that was all that was necessary for me."

It is apparent from these quotations that the witness is basing his claim of a change in the agreement upon the fact that the lease contains the clause, or else that he depends upon an alleged oral agreement, prior to the first contract, which contradicts that agreement. We think this testimony cannot be construed as tending to show that a change was agreed upon, particularly when the testimony of the witness Woodruff, that there was no such agreement, and the witness Stevens, that he never authorized any such change, is taken into account.

It is contended that the testimony is substantially the same as that introduced on the former trial, and that the Court held in that case that the question was for the jury. The testimony of the plaintiff himself, however, did not appear in the former record, and it was thought that, in the absence of direct evidence of the want of authority or of intention on the part of the plaintiff to change the terms of the preliminary agreement, inferences were open of an intention, in which the minds of the parties met, to make a change in the terms of the agreement. But this inference is now disproved by

direct testimony, and there being no evidence of an actual agreement, and there being direct proof that there was no intention on the part of the plaintiff to depart from the original agreement or to give authority to his agent to do so, we think the court was justified in directing a verdict.

The judgment will be affirmed.

The other Justices concurred.